IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAIME LUIS ESTRADA-MONZON,<br><br>Defendant. | CRIMINAL ACTION FILE<br>NO. 4:10-CR-53-RLV-WEJ |

## **NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on defendant Jaime Luis Estrada-Monzon's Motion to Suppress Statements [13]. The Court conducted an evidentiary hearing on said Motion on February 10, 2011 [18], which has been transcribed [21]. The parties have briefed the matter. (See Post-Evid. Hr'g Br. Supp. Def.'s Mot. Suppress Statements [22] ("Def.'s Br."); Gov't Resp. and Br. Opp'n Def.'s Mot. Suppress Statements [26] ("Govt.'s Br.").)[1]  On the basis of the testimony and evidence produced at that hearing, the undersigned **REPORTS** that law enforcement complied

---

[1] Defendant's Motion was filed by his former counsel, who represented him at the evidentiary hearing and filed defendant's post-hearing brief. Defendant later filed a Motion to Proceed Pro Se [24]. This Court granted defendant's Motion and directed his former counsel to remain on this case as standby counsel. (See Order of Apr. 6, 2011 [25].)

with the requirements of <u>Miranda</u> and that the statements made by defendant were made knowingly and voluntarily. Therefore, the undersigned **RECOMMENDS** that defendant's Motion to Suppress Statements [13] be **DENIED**.

I.     **STATEMENT OF FACTS**

    A.     **December 11, 2007 Statement**

On December 11, 2007, Michael Gladish, a deportation officer with Immigration and Customs Enforcement ("ICE"), took a sworn statement from defendant at the Stewart Detention Center in Lumpkin, Georgia, where defendant was in custody. (Tr. 4-5, 7, 9, 18.)[2] The statement was taken in an interview room with a table and a closed door; defendant was not handcuffed or otherwise restrained, and there were no armed guards. (<u>Id.</u> at 17, 20, 23.) Officer Gladish took that statement in Spanish, a language in which he is able to communicate based on the training and experience he acquired during eighteen years in the Border Patrol, as well as his time at the Stewart Detention Center. (<u>Id.</u> at 7-9.) Officer Gladish read

---

[2] Officer Gladish interviewed defendant as part of a reinstatement process, in which a previous order of removal is reinstated. (Tr. 6.) The record does not reflect how defendant came to be detained at the Stewart Detention Center or how long he had been there as of December 11, 2007. (<u>See</u> <u>id.</u> at 18-19 (Officer Gladish did not recall how long defendant had been detained.).) In all likelihood, defendant had been detained less than one month. (<u>See</u> <u>id.</u> at 19 (average detention period at Stewart Detention Center was "sometimes . . . 30 days, sometimes . . . a week").)

2

defendant his Miranda rights in Spanish before taking his statement. (Id. at 10.) Defendant understood what Officer Gladish told him and agreed to speak. (Id. at 9-10, 17.)

Mr. Estrada told Officer Gladish that he was from Guatemala and that he had entered the United States via Brownsville, Texas. (Tr. 10-11.) Defendant further stated that he had been removed by deportation and that he had returned to the United States without permission of the Attorney General. (Id. at 11.) Defendant's sworn statement, written by him in English and witnessed by Officer Gladish, is in the record as Government Exhibit 1. (See id. at 11-12.) Defendant also signed, and Officer Gladish also witnessed and signed, a form I-871, a notice of intent to reinstate prior removal order, which is in the record as Government Exhibit 2. (See id. at 13-15.)

Officer Gladish's recollection of the exchange is based entirely upon reviewing the notes he made following the interview. (Tr. 22, 62.) The interview lasted approximately ten to fifteen minutes, three to four minutes of which was spent administering Miranda rights. (Id. at 10, 16, 21.) During the interview, Officer Gladish did not threaten, coerce, or intimidate defendant in any way, and did not promise him anything. (Id. at 9, 16, 24.) Officer Gladish believed the interview

3

occurred in the middle of the day, and he did not know whether defendant had been fed or whether he suffered from any medical or psychological conditions at that time. (Id. at 20.) Defendant gave his statements voluntarily and did not appear to be under the influence of drugs or alcohol. (Id. at 16-17.) Officer Gladish did not recall whether defendant asked any questions or made any statements not recorded on the forms, and did not recall any discussion of a pending visa application. (Id. at 21-22, 24.) At some point following that interview, Mr. Estrada was returned to Guatamala. (Id. at 22.)

### B. August 17, 2010 Statement

Brandon Pelfrey, a deputy and 287(g) officer[3] at the Whitfield County Detention Center, interviewed Mr. Estrada on August 17, 2010. (Tr. 25-26.) The biographical information recorded on Mr. Estrada's booking sheet indicated that he was born outside the United States; thus, under the 287(g) program, Deputy Pelfrey interviewed defendant "[t]o establish whether or not he was in the United States illegally or legally." (Id. at 27-28.) Deputy Pelfrey, who is not fluent in Spanish,

---

[3] "The 287(g) Program permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement." United States v. Sosa-Carabantes, 561 F.3d 256, 257 (4th Cir. 2009) (citing 8 U.S.C. § 1357(g)(1)). Under that program, ICE trains and supervises local law enforcement officers. Id.

4

conducted the interview in English, and testified that defendant was able to speak and understand English. (Id. at 30-31, 48.) Defendant informed Deputy Pelfrey that he could read and understand writing in Spanish and in English, and that he spoke both languages. (Id. at 31-32.) Although he was informed of his right to a translator, defendant did not request one. (Id. at 47-48.)

Initially, Deputy Pelfrey did not advise defendant of any rights. (Tr. 28, 43, 45.) Rather, he confirmed the information already contained on the booking sheet, including that Mr. Estrada was born in and was a citizen of Guatamala. (Id. at 28, 42.) The interview occurred in the intake area; defendant was seated on a stool and was not handcuffed. (Id. at 41.) The document memorializing the initial conversation is called a "scratch 213" form and is in evidence as Government Exhibit 3. (Id. at 29.) Had defendant refused to answer the initial questions, he would have been fingerprinted and detained until his identity was ascertained, which could have taken up to one day. (Id. at 44-45.)

While verifying the booking information, Deputy Pelfrey did not question defendant about whether he was in the United States legally or illegally and in fact did not know that information. (Tr. 29-30, 46.) However, based on defendant's responses, the deputy testified that he "followed up with the standard packet that we

5

use that gives his rights." (Id. at 29-30.) That packet included a form providing Miranda rights in Spanish, which "is the standard form [used] unless somebody requests one in English." (Id. at 31, 48-49.) Defendant signed the rights waiver form and appeared to understand those rights; Deputy Pelfrey witnessed that signature and also signed the form. (Id. at 32.)

Upon obtaining the waiver of rights, Deputy Pelfrey proceeded to ask defendant questions from the Whitfield County ICE 287(g) Questionnaire for Foreign Nationals form. (Tr. 33-34.) Deputy Pelfrey recorded defendant's answers to the questions on that form, which both he and defendant signed. (Id. at 34-35.) Defendant's answers, as recorded on Government Exhibit 6, state that he is a citizen of Guatamala and that he entered the United States by "walking in to Texas in 2009," without legal documents to do so. (Id. at 35-36.) Deputy Pelfrey presented additional forms to Mr. Estrada and witnessed him initial those forms, which are included in the record as Government Exhibits 7-10. (Id. at 37-38.)[4] Defendant refused to answer some of the questions. (Id. at 51-52.)

---

[4] Deputy Pelfrey's interview with defendant was memorialized on an official I-213 form (as opposed to the scratch 213 form) prepared by Sergeant Carrie Benson based on the information provided by Deputy Pelfrey. (Tr. 39-40, 55-56.) However, that form was not tendered into evidence at the hearing. (See id. at 56, 61.)

**II.   THE CHARGING DOCUMENT**

On November 16, 2010, the grand jury returned a single-count Indictment [1] against Mr. Estrada alleging as follows:

> On or about August 17, 2010, in the Northern District of Georgia, JAIME LUIS ESTRADA-MONZON, an alien to the United States of America, was found within the United States after having previously been deported and removed from the United States, and without having obtained the express consent of the Attorney General, and the Secretary of Homeland Security, to re-apply for admission to the United States, in violation of Title 8, United States Code, Sections 1326(a) and (b)(1).

**III.   CONTENTIONS OF THE PARTIES**

Defendant asserts that his August 17, 2010 statements "must be suppressed because he did not voluntarily waive his Miranda rights due to the misleading nature of the interrogation." (Def.'s Br. 1.)[5] The Government responds that Miranda warnings were not necessary before the informational questions asked on August 17, 2010. (See Govt.'s Br. 5.)

---

[5] Defendant does not contest the admissibility of the December 11, 2007 statements. Rather, he argues without elaboration that "the proper vehicle to challenge these statements is a Motion in Limine . . . ." (Def.'s Br. 8.) Moreover, the evidence shows that Officer Gladish complied with the requirements of Miranda and that defendant's statements were made knowingly and voluntarily. (See supra Part I.A.) Accordingly, the undersigned will not recommend that those statements be suppressed.

7

## IV. ANALYSIS

In Jackson v. Denno, 378 U.S. 368, 376-77 (1964), the Supreme Court held that a defendant has a constitutional right to a fair hearing and an independent and reliable determination of the voluntariness of a confession before it is allowed to be heard by a jury. Title 18 U.S.C. § 3501(a) codifies the Jackson v. Denno requirement for criminal prosecutions and provides that, before a confession or self-incriminating statement is received in evidence, "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." United States v. Davidson, 768 F.2d 1266, 1270 n.1 (11th Cir. 1985).

A two-part inquiry determines the admissibility of a confession or self-incriminating statement. First, the Court must consider whether the Government complied with the requirements of Miranda v. Arizona, 384 U.S. 436 (1966). Second, if those requirements were met, the Court must consider whether the confession or self-incriminating statement was voluntary. United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) (per curiam); United States v. Sims, 719 F.2d 375, 378 (11th Cir. 1983) (per curiam). The Court makes these inquiries separately below.

8

### A.      Compliance with Miranda

In <u>Miranda</u>, the Supreme Court noted that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 384 U.S. at 478. Therefore, the Court held that the procedural safeguard of warning the suspect of his constitutional rights must be instituted to protect the privilege. <u>Id.</u> at 478-79. These so-called <u>Miranda</u> warnings "are required before any statement may be admitted into evidence at trial which was elicited from a person in custody through interrogation." <u>Endress v. Dugger</u>, 880 F.2d 1244, 1248 (11th Cir. 1989).

The testimony at the hearing shows that Deputy Pelfrey initially asked defendant questions to verify the information on the booking form. Notably, questioning defendant about his citizenship, as it was reflected on the booking form, is not the same as questioning him about his immigration status. (<u>See</u> Def.'s Br. 8.) When defendant confirmed that he is a citizen of Guatamala, Deputy Pelfrey administered the <u>Miranda</u> rights before proceeding with questioning intended to discover whether defendant was in this country legally. Thus, the first prong of the two-part inquiry has been established.

9

### B. Voluntariness

Determining whether a confession or incriminating statement is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's "free and rational" choice. Jones, 32 F.3d at 1516. In Arizona v. Fulminate, 499 U.S. 279, 285-88 (1991), the Supreme Court held that the issue of voluntariness is determined by the totality of the circumstances. In evaluating the totality of the circumstances, the district court must assess whether law enforcement conduct was "causally related" to the confession. Jones, 32 F.3d at 1516-17. The standard applied in the Eleventh Circuit is as follows:

> Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice.

Id. at 1517 (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992)), abrogated on other grounds, Coleman v. Singletary, 30 F.3d 1420 (11th Cir. 1994).

In this case, the undisputed evidence shows that Mr. Estrada was not subjected to an exhaustingly long interrogation or any threat of physical force. He was not

10

promised anything or deceived in any way. There is no evidence that he was unable to understand what was happening or that he was under the influence of any drugs. As noted above, defendant did refuse to answer some of the questions. Thus, under the totality of the circumstances, the Court concludes that Mr. Estrada made a knowing, voluntary, and intelligent waiver of his right to remain silent. Therefore, defendant's Motion should be **DENIED**.

## V.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Motion to Suppress Statements [13] be **DENIED**.

**SO RECOMMENDED**, this 25th day of April, 2011.

*Walter E. Johnson*
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE NO. 4:10-CR-53-RLV-WEJ |
| JAIME LUIS ESTRADA-MONZON, | |
| Defendant. | |

**ORDER FOR SERVICE OF**
**<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

Let this Non-Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and the Court's Local Criminal Rule 58.1(A)(3)(a), be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Non-Final Report and Recommendation within fourteen days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court. Failure to object to this Non-Final Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 58(b)(2).

The Clerk is directed to submit the Non-Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 25th day of April, 2011.

*Walter E. Johnson*
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2

AO 72A
(Rev.8/82)